IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Corey L. Frazier,      )<br>   Plaintiff,      )<br>                             )<br>   v.      )<br>                             )<br>Wal-Mart,      )<br>   Defendant.      )<br>                             ) | Case No. 6:10-cv-2007-JMC-JDA<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 45.] Plaintiff filed this action alleging a race discrimination claim and a failure to pay a shift premium claim. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

Plaintiff is an African-American male who began working for Defendant as a sales associate in the produce department of Defendant's Greer, South Carolina retail store in April 2007. [Doc. 45-2 at 3:9, 97.] On September 27, 2007, Plaintiff was promoted to a lead associate position in the produce department. [*Id.* at 98.] On March 8, 2008, Plaintiff began working as a grocery reclamation associate. [*Id.* at 99.] Plaintiff's normal work schedule was 8:00 a.m. to 5:00 p.m. and 5:00 a.m. to 2:00 p.m. [*Id.* at 5:18–20.] When Plaintiff worked in the produce department, he sometimes came in at 4:00 a.m. [*Id.* at 5:21–24]

On October 20, 2009, Plaintiff filed a Charge of Discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC"), which was duly filed with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 1-1.] The Charge included

allegations about (1) having to work weekends when a white, female employee did not have to work weekends and (2) management discussing claims updates with a white, female employee but not with Plaintiff. [Doc. 1-1 at 5.] In August 2009, Plaintiff sent a letter to market human resources manager Yolanda King ("King") alleging (1) Defendant allowed employee Grady Edwards ("Edwards") to continue working for Defendant after Edwards made racial comments; (2) Edwards and Tim Turner ("Turner") put wrong counts in for Plaintiff's department; (3) Edwards and Turner were not punished for violating company policies when a black man had been fired for the same thing; and (4) Plaintiff has to do all scan outs, even for other departments. [Doc. 1 at 4–6; Doc. 45-2 at 26:12–24.]

In March 2010, Plaintiff searched for and found the Wage Guidelines – Field Logistics policy. [Doc. 42-5 at 70:20–23, 75:14–76:15.] The Wage Guidelines – Field Logistics policy applies to field logistics associates who work in distribution centers, not retail stores, and provides a shift premium for working third shift and for working weekends. [Doc. 1 at 3; Doc. 1-4; Doc. 42-5 at 79:15–81:25.] After finding this policy, Plaintiff approached co-manager Justin Snipes ("Snipes"), asked why Plaintiff was not receiving a shift premium for working Saturdays and for working third shift, and was told he was not entitled to a shift premium. [Doc. 42-5 at 16:13–22, 17:1–3, 70:25–71:24.]

Plaintiff filed this action on August 2, 2010, alleging race discrimination and failure to pay a shift premium. [Doc. 1.] On March 30, 2011, Defendant filed a motion for summary judgment. [Doc. 45.] Plaintiff filed a response in opposition to the motion for summary judgment on April 13, 2011 [Doc. 48], and Defendant filed a reply on April 21, 2011 [Doc. 50]. Plaintiff filed a sur-reply on April 26, 2011. [Doc. 52.] The motion is now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

4

> admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Race Discrimination Claims**

### *Failure to Exhaust Administrative Remedies*

As an initial matter, Defendant is entitled to summary judgment on some of Plaintiff's allegations of race discrimination because Plaintiff failed to exhaust administrative remedies with respect to those allegations.

A Title VII claimant must first exhaust administrative remedies before filing a claim in federal court. *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). The administrative remedies require that the EEOC (1) "conduct[] an investigation and determine[] the validity of the claim"; and (2) "decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which letter is essential to initiation of a private Title VII suit in federal court." *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 138 (4th Cir. 1995). Additionally, where a state remedial scheme exists, "commencement of proceedings under state law is a prerequisite to EEOC action." *Id.* The claimant's EEOC charge "defines the scope of h[is] subsequent right to institute

a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)). Only claims "reasonably related" to those in the EEOC charge may be advanced in a subsequent civil suit. *See id.* (citing *Chisolm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

Here, Plaintiff's Charge included allegations about (1) having to work weekends when a white, female employee did not have to work weekends and (2) management discussing claims updates with a white, female employee but not with Plaintiff. [Doc. 1-1 at 5.] The Complaint includes additional allegations of race discrimination contained in a letter from Plaintiff to King in which Plaintiff alleged: (1) Defendant allowed employee Edwards to continue working for Defendant after Edwards made racial comments; (2) Edwards and Turner put wrong counts in for Plaintiff's department; (3) Edwards and Turner were not punished for violating company policies when a black man had been fired for the same thing; and (4) Plaintiff has to do all scan outs, even for other departments.[1] [Doc. 1 at 4–6.] Because these additional allegations were not included in the Charge and are not "reasonably related" to the claims in the Charge, Plaintiff has failed to exhaust administrative remedies with respect to these claims. Accordingly, Defendant's motion for summary judgment should be granted with respect to Plaintiff's claims that (1) Defendant allowed Edwards to continue working for Defendant after Edwards made racial comments;

---

[1] The Court notes the "Statement of Claim" section of the Complaint includes only allegations regarding Plaintiff's wage payment claim. [Doc. 1 at 3.] However, between the "Statement of Claim" section of the Complaint and the "Relief" section of the Complaint, Plaintiff included a letter dated August 20, 2009 from Plaintiff to King, in which Plaintiff makes allegations related to race discrimination. [*Id.* at 4–6.] Because Plaintiff is proceeding pro se, the Court liberally construes the Complaint as including these race discrimination allegations from the August 20, 2009 letter. Additionally, although the Complaint itself does not include the allegations from the Charge, because Plaintiff attached the Charge, the Court liberally construes the Complaint as including the allegations from the Charge.

(2) Edwards and Turner put wrong counts in for Plaintiff's department; (3) Edwards and Turner were not punished for violating company policies when a black man had been fired for the same thing; and (4) Plaintiff has to do all scan outs, even for other departments.[2]

### *Failure to Establish Prima Facie Case*

With respect to the remaining race discrimination claims—(1) having to work weekends when a white, female employee did not have to work weekends and (2) management discussing claims updates with a white, female employee but not with Plaintiff—Plaintiff has failed to establish a prima facie case of race discrimination, and therefore, Defendant is entitled to summary judgment on these claims.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision."

---

[2] The Court notes in his response in opposition to the motion for summary judgment, Plaintiff alleges he received a verbal coaching for skipping meal periods while a Caucasian employee did not receive any discipline for skipping meal periods. [Doc. 48 at 4–5.] Plaintiff failed to include this allegation in his Complaint; however, assuming without deciding this allegation is properly before the Court, Plaintiff has failed to exhaust administrative remedies with respect to this claim because it was not included in the Charge and is not "reasonably related" to the claims in the Charge. Additionally, even though Plaintiff does not appear to allege a race discrimination claim based on the alleged failure to pay him a shift premium when he worked hours on third shift, to the extent Plaintiff's allegations regarding failure to pay the shift premium can be construed as part of his race discrimination claim, these allegations also fail because Plaintiff failed to exhaust administrative remedies with respect to these claims.

7

*Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff "may 'proceed under [the *McDonnell Douglas*] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'"[3]  *Id.* (quoting *Hill*, 354 F.3d at 285).  To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances.[4]  *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).

Here, Plaintiff has failed to demonstrate he suffered an adverse employment action. "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375–76 (4th Cir. 2004) (alteration in original) (citation and internal quotations

---

[3] Under this framework, an employee must first prove a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).  If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation.  *McDonnell Douglas*, 411 U.S. at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

[4] With regard to the fourth element, the Fourth Circuit has noted the critical objective "is that the [employee] demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.' " *E.E. O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 851 n. 2 (4th Cir. 2001) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

omitted).  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted).  Plaintiff's allegations about working weekends and management not discussing claims updates with Plaintiff are not adverse employment actions because they do not constitute a significant change in employment status.  *See Richardson v. Richland Cnty. Sch. Dist.*, 52 F. App'x 615, 616 (4th Cir. 2002) (holding teacher's complaints about room assignment, availability of a key, and allocation of new computers were not adverse employment actions because they did not have an adverse effect on the terms, conditions, or benefits of employment); *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (holding a shift change, a transfer that lengthened the employee's commute, a disciplinary action, an evaluation, letters of warning, being assigned to difficult cases and additional work allegedly outside the employee's normal job responsibilities, refusing to approve annual leave requests, and denying a parking permit were not adverse employment actions because they did not alter the terms and conditions of the employee's job); *Robinson v. Kim*, No. 04-3678, 2005 WL 326985, at * 4 (N.D. Ill. Feb. 8, 2005) (holding an employee's having to make up hours on the weekends instead of at night was not an adverse employment action).  Accordingly, because Plaintiff has failed to establish he suffered an adverse employment action, he has failed to establish a prima facie case of race discrimination.  Therefore, Defendant's motion for summary judgment should be granted with respect to Plaintiff's claims about (1) having to work weekends when a white, female employee did not have to work weekends and (2)

9

management discussing claims updates with a white, female employee but not with Plaintiff.

**Shift Premium Claims**

It is unclear from the Complaint whether Plaintiff brings his failure to pay a shift premium claim under the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq., or as a breach of contract claim, but how Plaintiff asserts his claim is irrelevant because the policy on which Plaintiff bases his claim does not apply to Plaintiff.

Plaintiff bases his failure to pay a shift premium claim on the Wage Guidelines – Field Logistics policy, which applies to field logistics associates who work in distribution centers, not retail stores, and provides premium pay for working weekends and/or third shift. [Doc. 1 at 3; Doc. 1-4.] Plaintiff concedes the Wage Guidelines-Field Logistics policy applies only to logistics associations and does not apply to store associates. [Doc. 1 at 3; Doc. 42-5 at 79:15–81:25.] Accordingly, Defendant's motion for summary judgment should be granted with respect to Plaintiff's shift premium claims.[5]

---

[5] Even though Plaintiff bases his shift premium allegations on a policy that does not apply to store associates like Plaintiff, in an abundance of caution, the Court has reviewed the Premium Pay and Associate Pay policies that apply to store associates like Plaintiff. [Doc. 45-2 at 109–15.] Those policies provide for premium pay only for working on Sundays. [Id.] Plaintiff admits he received premium pay for working on Sundays. [Id. at 86:16–21, 90:17–20.] Accordingly, to the extent Plaintiff's Complaint could be construed as alleging a shift premium claim based on these policies that apply to store associates, summary judgment should be granted because Plaintiff admits he received premium pay under these policies.

Additionally, the Court has reviewed the Field Non-Exempt Associate Pay Plan that applies to store associates like Plaintiff. [Doc. 45-4.] This policy defines the Overnight Differential/Premium as "[a]n additional amount of money paid but not included in the base rate of pay to an Associate whose job code is designated as 'Overnight'. Overnight is defined as more than 50% of an Associate's hours of work are between 10:00 pm and 7:00 am" [Id. at 5.] Plaintiff admits his job code was never designated as "Overnight." [Doc. 45-2 at 72:19–74:21.] Additionally, Plaintiff was not entitled to an overnight premium for working from 4:00 a.m. to 1:00 p.m. or 5:00 a.m. to 2:00 p.m. because fewer than 50% of his hours of work were between 10:00 p.m. and 7:00 a.m. The Field Non-Exempt Associate Pay Plan also states, "An Associate is eligible to receive the temporary overnight differential if he/she is a non-overnight primary job code and works in an overnight capacity for more than a two (2) week period." [Doc. 45-4 at 17.] Plaintiff admits he never worked third shift for any two week period during his employment with Defendant. [Doc. 45-2 at 74:10–11.] Accordingly, to the extent Plaintiff's Complaint could be construed as alleging a shift premium claim based on this policy that

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 45] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

February 1, 2012
Greenville, South Carolina

---

applies to store associates, summary judgment should be granted because Plaintiff has failed to establish he was denied a shift premium pursuant to a policy that actually applies to Plaintiff—Plaintiff admits he did not work in an overnight job and never worked third shift for any two week period.